The trial court committed harmful error when it permitted licensed practical nurse Brenda Aldridge to give expert testimony during trial, even though she had only been disclosed as a fact witness her testimony about the sort of injuries she would have expected to see had Patterson been attacked as a human being and not as a medical malpractice. The defendants do not dispute that nurse Aldridge gave expert testimony, they do not dispute that she had not been disclosed as an expert before trial nor qualified as one during trial. That leaves two issues for this court to decide. First, was Aldridge's expert testimony proper? And second, was admitting Aldridge's expert testimony harmless? Turning to the first issue, Patterson did not open the door to Aldridge's testimony. Nothing we asked required her to draw on any specialized medical knowledge. Mr. Chair, you asked a question of Ms. Aldridge on redirect about whether or not it was possible to have a headache or soft tissue issues without any visible symptoms. And on recross, didn't she just testify to the flip of that, that essentially it's also possible to have that with visible symptoms? That seems like an opening of the door to me. No, Your Honor. The questions that we asked during redirect asked for nurse Aldridge to confirm the obvious, that it's possible to experience something painful like a headache, which everyone has experienced. Every juror has experienced that. But by contrast, the defendants asked for the injury she would have anticipated seeing based on someone who had been beaten up by prison guards. And her opinion about that is not within the realm of common knowledge or common experience. You're correct that that was the question, but that's not what she answered. They asked if she would anticipate, but her answer was that it's not always, but it's possible to have bruising and redness. Your Honor, read in context, she's responding to a question about what she would have anticipated seeing when she saw Patterson, which is she would have anticipated seeing possibly bruising and some redness. And that required her to draw on her specialized medical knowledge as defendants. Let me ask you a hypothetical. Suppose that we have a case of a car owner that's upset with the garage about a negligent repair. And the mechanic who did the repair is testifying and has asked the question, when the car came in and you put it up on the lift, what did you see? What did you not see? And what did you expect to see? Are those answers expert testimony? In regards to the first two, what the mechanic saw and what the mechanic did not see, that is merely percipient witness testimony. That's squarely within the realm of fact testimony. But an opinion about what the mechanic would have expected to see, that's drawing on that mechanic's specialized knowledge as an automobile professional. And the defendants here. So in a case like that, when in a case like that, it's about an oil leak. You have to provide expert disclosures and the mechanic has to prepare an expert report saying, well, when he told me that every morning there was a quarter size drop of what looked like oil on the driveway. I thought when I put it up on a lift, I'd find some indication of an oil leak. That's what I thought. Your Honor, in the situation where a witness is asked to draw on specialized knowledge that is not within the realm of common knowledge that jurors may have. Yes. So my mechanic and my mechanic in the hypothetical would have to issue an expert report. Your Honor, I don't believe the disclosure, the rule 26 disclosure requirements there require a full blown expert report. There needs to just be a summary of the facts and opinions on which. I just think you're you're into a world where so much of this is and you could change the hypothetical to an emergency room physician or go on and on and on. Where you're talking about percipient testimony from someone that may harbor specialized knowledge from their work. And I, I, I worry that that just completely transforms our understanding of the distinction between lay testimony and expert testimony. Your Honor, I understand your concerns, but under this court's precedence in Kribble and in United States v. Thomas, this court has made very clear that fact witnesses, if they are going to give expert testimony, need to be disclosed as experts. Because in the situation that you've described, Your Honor, you're the incentives for litigants would be to try to elicit expert testimony from any fact witness with professional credentials and then hope to win on harmless error on appeal or later in the trial. And that seems like that would create a situation where the expert disclosure requirements under this court's precedence and under the federal rules of civil procedure have been rendered meaningless. There would be very little incentive to comply with those disclosure requirements if it were that easy. This court has consistently stressed that district court needs to be a gatekeeper that can prevent unreliable expert testimony from reaching the jury. And here, Aldridge's testimony was not harmless. There is a significant chance that her testimony affected the outcome of the trial. As this court has recognized, expert testimony is incredibly powerful and has the potential to unduly influence jurors. Jurors defer to an expert's special aura of reliability. And we think that happened here because Nurse Aldridge's testimony skewered Patterson's credibility. She told jurors about the sort of injuries she would have expected to see, but she did not observe those. And then during closing, the defendants reminded jurors about Aldridge's testimony and what she said in her professional medical opinion in trying to argue that Patterson was not credible. Mr. Fisher, why isn't this, this picks up on something you said earlier about your question to Ms. Aldridge, that if you have a headache, there may or may not be visible signs. Why aren't these questions about if you have a soft tissue issue, whether or not there would be visible symptoms, such as bruising or redness, really just common knowledge? I mean, ask any mom who has a kid who's fallen and gotten a soft tissue injury. They can testify that sometimes there's bruising and swelling. It's not as if you're asking something that would require a medical degree. Your Honor, here in response to our objection, the defendants said she would be considered an expert. And that's why she could answer a question about what she would have anticipated. Well, putting aside what they said, we're reviewing this. We don't have to accept that concession. You asked really essentially the flip of this to Ms. Aldridge and claimed that was common knowledge. Why wouldn't, whether or not a soft tissue injury, if you're hit, if you fall, whether or not that would cause bruises or redness, why isn't that common knowledge? Well, Your Honor, here, as Patterson testified, he does not bruise easily. And given his dark complexion, it makes it very difficult to see bruising on him. So there's more nuance here than I think the district court appreciated. And I see I'm into my rebuttal time. So unless the court has further questions, I would like to reserve the remaining time for rebuttal. Did you answer St. E's question? Did she answer your question? Sort of. Thank you. I'll try again. All right. Ms. Buell. Good morning. I'm Beth Buell, Assistant Attorney General, Caitlin Buell, on behalf of Defendants at Belize. During Patterson's excessive force trial, he called his treating nurse, Brenda Aldridge, to deliver testimony about her treatment decisions and observations as a fact witness. But Patterson, on his redirect examination, elicited expert witness testimony from Aldridge about the possibility of visible symptoms for self-reported and soft tissue injuries. Because Patterson opened the door to this expert testimony on the topic of visible injuries, defendants permissibly probed Aldridge about the likelihood of visible injuries after a situation as Patterson had described. Aldridge responded, quote, with what the inmate complained of, there would have been possibly, not always, but possibly bruising and some redness. Like the statements elicited from Patterson during redirect examination, this equivocal statement was expert testimony. And on appeal, Patterson seeks to overturn the jury's verdict, contending it is impermissible expert testimony. But this court should affirm the jury's verdict on the district court's judgment because it was Patterson, not defendants, who initially elicited expert testimony from Aldridge. Why is the attorney general so quick to call this expert testimony? I would say that because of this court's decision in Musser v. Gentiva Health Services, when someone is a treating nurse or a physician and they stop delivering observations about treatment and firsthand knowledge and start to deliver opinions and specialized knowledge based on a medical experience in general and about the generalities of medical testimony, they must be an expert witness. I do know that it is the auto mechanic in my oil leak hypothetical, an expert. Excuse me, you cut out a little bit. Is the auto mechanic in the oil leak hypothetical an expert? I would think that the auto mechanic in your oil leak example would not be an expert. And that's because the auto mechanic is actually discussing what they actually saw on the day and even potentially what they generally saw, their specialized knowledge. And how the auto mechanic differs from Nurse Aldridge here is that Nurse Aldridge, even when she's discussing about what she might generally see, she is discussing, she's applying her general theory of what she generally sees to the case at hand. And that's what makes it expert testimony. Does the district judge have a requirement to identify who is expert and who isn't? The district judge can properly admit expert testimony and did so here, especially since all parties were proceeding by the time redirect and recross examination happened, that there was expert testimony and that Patterson had opened the door to. Overall, Patterson, the scope of the recross examination was mirroring what was happening on direct. Until that point, the parties had really been focused on the injuries that were presented in the injury report and Patterson opened the door to those questions by asking. In general, was it possible to feel pain without showing visible symptoms? Is it possible for there not to be visible symptoms for something like a headache and for soft tissue injuries? Is it possible for them to be self reported? And so, like in the first circuit case of McCauley versus the no Patterson doesn't queue to the line of questioning appropriate for a fact witness expands it to these sort of generalized expert matters. And so the first circuit found that by blurring this line during by asking a fact witness matters that would have required expert witness designation. They had opened the door on cross examination to further probe the subject, even if it would have been traditionally expert testimony. And so here defendants were allowed to speak any clarification and probe the limits of when an individual might experience a soft tissue injury for which there was no visible symptoms on recross. This is completely within the scope. It's not a situation as was done in the reply brief where it would be a completely new topic. Some sort of district court limit redirect. Did the court have rules that would have precluded the plaintiff from coming back and asking follow up questions? Absolutely not your honor. And in fact, plaintiff could have asked any sort of follow up questions about Aldridge's experience. If he was concerned about it, even though he had previously treated her as an expert, they could have asked more about the soft tissue injury. There was no sort of limitation. This was a case. Would the plaintiff been able to take time out and call an expert of his own? I believe that the plaintiff would have was already treating nurse Aldridge as an expert during his. I would disagree. I think that he was treating Aldridge as his expert. He called her as a fact witness and then began during redirect examination, treating her as an expert witness, discussing her credentials as a nurse and a licensed nurse and as an adjunct nurse instructor and asking her questions pertaining to her knowledge, experience and expertise about different types of injuries. And to the extent that he was dissatisfied, just like in United States versus con, he could have asked for a board here when he made his objection. He could have asked for additional sidebars or even questions in front of the jury, and he did not do so. Overall, any admission of Aldridge's testimony on reclass examination, we would contend was not air. But even if it was so, it was decidedly harmless. Patterson was the first one to elicit this testimony, so he should not have been surprised by it. And as we discussed, he had the opportunity to cure prejudice through further questioning. And overall, her equivocal statement would not have made a difference in light of the other testimony and exhibits of trial. Her testimony was not groundbreaking. She said that with what the inmate complained of, it would have possibly not always but possibly been some bruising and some redness. And here that did not mean automatically as Patterson is contending now that in her opinion, he would have had to have shown signs of visible injury to have been beaten the way he described. It was consistent with the injury report where Aldridge noted that she didn't see visible injuries, but that there was a subjective complaint of pain and a soft tissue injury. It was left up for the jury to decide who to believe, and jurors chose not to believe Patterson. And it's a well-settled principle that this court will not disturb the jury's credibility determinations on appeal. If there are no further questions, Defendant Zappolios would request that this court affirm the district court's judgment and the jury's verdict. Thank you. Thank you. Mr. Fisher. Mr. Fisher. Yes, Your Honor. A couple points in our battle. First, Aldridge's testimony was not within the realm of common knowledge. The question of what someone would have looked like after they've been beaten up by prison guards is not something that everyone has experienced. But that's not exactly what the question was. It wasn't what would you look like after beaten up by prison guards. It was would you show visible signs of a soft tissue injury? It was based on what Patterson had complained of, what she would have anticipated seeing, which is drawing on that specialized medical knowledge as defendants conceded. Then why wasn't it eliciting expert testimony when you, and I don't know if it was you, Mr. Fisher, but when Mr. Patterson's counsel asked on direct examination, is it possible to not have visible symptoms with a headache or soft tissue injury? Why isn't that expert testimony? Your Honor, other than confirming what is common knowledge, it's merely clarifying what Nurse Aldridge wrote in the injury report itself, which is that Patterson reported he was in pain, even though there were no visible symptoms, and she thought there was a soft tissue injury, which is very different than offering an opinion or a summary of her experience as my opponent. So it's not expert to testify that it's possible not to have visible symptoms, but it crosses into expert testimony to give the flip that it's also possible to have visible symptoms? That doesn't make sense. Your Honor, we don't think that their question was just the flip of what we asked. We think their question was very different in terms of what Nurse Aldridge would have anticipated seeing based on what Patterson complained of. We think that's very different than what we asked Patterson during his redirect. For those reasons, we think this court should vacate the judgment, reverse the district court's decision to admit Aldridge's testimony, and remand for a new trial. Thank you. All right. Thanks to both counsel. The case will be taken under advisement.